**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM Z.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 21-cv-6785** |
| **v.** | ) | |
| | ) | **Magistrate Judge Jeffrey I. Cummings** |
| **KILOLO KIJAKAZI,[1]** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

William Z. ("Claimant") moves to reverse the final decision of the Commissioner of Social Security ("Commissioner") to deny his application for Disability Insurance Benefits ("DIBs"). (Dckt. #16). The Commissioner responds with a cross-motion for summary judgment, (Dckt. #19), seeking to uphold the Commissioner's decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion to reverse the decision of the Commissioner is granted, and the Commissioner's motion for summary judgment is denied.

## I. BACKGROUND

### A. Procedural History

On October 10, 2019, Claimant, who was forty-two years old at the onset of his alleged disability on July 31, 2019, filed an application for DIBs alleging disability due to a back injury, panic attacks, and depression. (Administrative Record ("R.") 105). His application was denied

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Claimant only by his first name and the first initial of his last name.

initially on February 24, 2020 and upon reconsideration on October 24, 2020. (R. 114-15, 132-33). Claimant timely filed a request for a hearing, which was held via telephone on April 6, 2021. (R. 45-104). Claimant, who appeared with counsel, testified at the hearing as did his wife and a vocational expert ("VE"). (*Id*.). On May 20, 2021, the Administrative Law Judge ("ALJ") issued a written decision denying Claimant's application for benefits. (R. 13-38). Claimant requested review with the Appeals Council, which denied his request on October 22, 2021, (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

**B. The Social Security Administration Standard to Recover Benefits**

In order to qualify for disability benefits, a claimant must demonstrate that he is disabled. An individual does so by showing that he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind.

Oct. 22, 2019). If the claimant establishes that he has one or more physical or mental impairments, the ALJ then determines whether the impairment(s), standing alone or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, he is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess the claimant's residual functional capacity ("RFC"), which defines his exertional and non-exertional capacity to work despite the limitations imposed by his impairments. The SSA then determines at step four whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id*. If the claimant cannot undertake his past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of his RFC, age, education, and work experience. An individual is not disabled if he can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

**C. The ALJ's Decision**

The ALJ applied the five-step inquiry as required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged onset date, July 31, 2019, and met the insured

status requirements of the Act through December 31, 2024. (R. 15). At step two, the ALJ determined that Claimant suffered from the severe impairments of obesity, degenerative disc disease of the lumbar spine status post-fusion, depression disorder, post-traumatic stress disorder ("PTSD"), and panic disorder. (*Id.*). Then, at step three, the ALJ found that Claimant had no impairment or combination of impairments that meets or medically equals one of the listed impairments in the Regulations. (R. 16). Specifically, the ALJ considered each of the following listings: (1) 1.15 ("Disorders of the skeletal spine resulting in compromise of the nerve root(s)"); (2) 1.16 ("Lumbar spinal stenosis resulting in compromise of the cauda equina"); (3) 12.04 ("Depressive, bipolar and related disorders"); (4) 12.06 ("Anxiety and obsessive-compulsive disorders"); (5) 12.11 ("Neurodevelopmental disorders"); (6) 12.15 ("Trauma and stressor-related disorders"); and (7) SSR 19-2p as it relates to Claimant's obesity. (R. 16-17).

Before turning to step four, the ALJ concluded that Claimant had the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) except standing or walking for hours of an eight hour day; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; no climbing of ladders, ropes, or scaffolds; no working around unprotected heights, open flames or unprotected dangerous moving machinery; simple, routine tasks involving simple work related decisions; not requiring a fast paced production rate pace or strict production quotas; no work with co-workers in a collaborative environment or where he would be required to participate in team tasks; and no more than incidental interaction with the public.

(R. 19). At step four, the ALJ concluded that Claimant could not perform his past work as a cable technician-installer or customer service representative. (R. 36). Finally, at step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Claimant could perform, including in the representative positions of electronics worker (15,000 nationally-available jobs); assembler of small products (19,000 jobs); production assembler (12,000 jobs); document preparer (47,000 jobs); final assembler (10,000 jobs); and touch up screener in printed

circuit board assembly (33,000 jobs). (R. 36-37). Thus, the ALJ determined that Claimant was not disabled from July 31, 2019, through the date of the decision, May 20, 2021. (R. 37).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant

is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

## III. ANALYSIS

Claimant urges this Court to reverse the Commissioner's decision arguing, *inter alia*, that the ALJ erred in her assessment of his RFC. Specifically, Claimant asserts that although the ALJ found persuasive the opinion of state agency psychological consultant Richard Zaloudek, M.D. that Claimant required RFC limitations in his ability to adapt to workplace changes, the ALJ neither adopted RFC restrictions specific to this limitation nor explained why she omitted such restrictions. (Dckt. #16 at 1, 6-7). For the reasons set forth below, the Court agrees. Because this argument has merit, the Court finds that a remand to the SSA is warranted and will not address Claimant's remaining arguments. *See Decamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations in concentration, persistence, and pace, we do not address DeCamp's other arguments.").[2]

### A. The ALJ failed to build a logical bridge between the physician's opinion that she found persuasive and her assessment of Claimant's mental RFC.

"The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759, F3d 811, 817 (7th Cir. 2014); *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (The RFC "is the most an individual can work despite his or her limitations or restrictions."). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator *must* explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (emphasis added). As such, although ALJs are not mandated to "adopt each and every limitation

[2] The Court's decision in this regard is not a comment on the merits of Claimant's other arguments and he is free to re-assert them on remand.

opined by a physician, even when she finds the opinion persuasive," *Jack A. v. Kijakazi*, No. 20 C 3446, 2021 WL 5882145, at *3 (N.D.Ill. Dec. 13, 2021), if an ALJ finds a medical opinion persuasive, she "must explain why limitations included in the opinion are not included in the RFC." *Smith v. Colvin*, 9 F.Supp.3d 875, 887 (E.D.Wis. 2014); *Johnson v. Saul*, No. 19-C-856, 2020 WL 1900139, at *10 (E.D.Wis. Apr. 16, 2020) (same, quoting *Smith*); *Sapp v. Saul*, Case No. 1:19-cv-00121-JD, 2020 WL 1061238, at *5 (N.D.Ind. Mar. 4, 2020) (ALJ's failure to provide adequate explanation for not including limitations from a medical opinion to which he gave great weight "prevents the Court from following the ALJ's reasoning and affording Ms. Sapp a meaningful review."); *see also Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). An ALJ's unexplained decision to omit a limitation specified by an expert whose opinion the ALJ found to be persuasive constitutes a failure to "build a logical bridge from the evidence to her RFC finding and disability determination." *Smith*, 9 F.Supp.3d at 887; *Sapp*, 2020 WL 1061238, at *5.

**1. The ALJ found Dr. Zaloudek's opinion regarding Claimant's RFC to be persuasive.**

On October 18, 2020, state agency medical consultant Dr. Zaloudek reviewed Claimant's file at the reconsideration level. (R. 129-31). Dr. Zaloudek considered Claimant's medical history, found that he has several mental health impairments, and concluded that his mental condition was unlikely to improve within twelve months. (R. 119, 124-25). In particular, Dr. Zaloudek found that:

> the combination of PTSD, severe depression, and anxiety result in a markedly severe impairment of psychosocial functioning. [Claimant's] ability to perform activities within a schedule and maintain regular attendance and be punctual with customary tolerances is markedly limited. [Claimant] has borderline intellectual judgment which causes marked limitation in his ability to complete a normal workday without interruption . . . the claimant has major cognitive impairments and problems with memory and concentration. [Claimant's] ability to respond to work

> pressures or changes in a work setting is markedly limited. [Claimant's] ability to interact appropriately with coworkers and supervisors is markedly limited.

(R. 119). Dr. Zaloudek opined that the above impairments manifested in moderate limitations in Claimant's ability to respond appropriately to changes in the workplace, to accept instructions, and to respond appropriately to supervisory criticism. (R. 130-31). According to Dr. Zaloudek, "frequent adaptive changes may prove too difficult [for Claimant] but occasional adaptive changes appear manageable." (R. 131). He therefore proposed the following mental RFC:

> Mentally [Claimant] is limited to simple tasks that do not require tight quotas and timelines. *The work settings should be relatively static and not need more than occasional adaptive changes*. [Claimant] can manage social contact and interactions within these types of work environments.

(*Id*.) (emphasis added).

The ALJ found Dr. Zaloudek's opinion to be persuasive. (R. 34-35). In doing so, the ALJ thoroughly discussed Dr. Zaloudek's review of Claimant's symptoms and resulting opinion as part of her decision. Notably, the ALJ quoted Dr. Zaloudek's finding that:

> [A]daptive changes may prove too difficult for the claimant but occasional adaptive changes appear manageable. [Dr. Zaloudek] opined that mentally the claimant is limited to simple tasks that do not require tight quotas and timelines. *The work settings should be relatively static and not need more than occasional adaptive changes*. The claimant can manage social contact and interactions within these types of work environments.

(R. 34) (emphasis added). The ALJ then explained that Dr. Zaloudek's opinion "is supported by and consistent with the medical evidence at the hearing level so it is found to be persuasive." (*Id*.).

**2. The ALJ erred by formulating Claimant's mental RFC without including the limitations on adaptive changes recommended by Dr. Zaloudek and failing to explain the omission of these limitations.**

Although the ALJ expressly acknowledged Dr. Zaloudek's finding "that frequent adaptive changes may prove too difficult for the claimant" and that "work settings should be

relatively static and not need more than occasional adaptive changes," (R. 34), she failed to include any limitations on adaptive changes in Claimant's mental RFC. Instead, the ALJ formulated Claimant's mental RFC in a manner which she stated was consistent with Dr. Zaloudek's opinion by "limit[ing] the claimant to simple routine tasks involving simple work-related decisions not requiring a fast-paced production rate pace or strict production quotas." (R. 35). Claimant now asserts that the ALJ erred by failing – without explanation – to include Dr. Zaloudek's recommended limitation on adaptive changes in Claimant's mental RFC. (Dckt. #16 at 7-8). The Commissioner does not dispute that the ALJ failed to include any limitations in the RFC that expressly addressed Claimant's difficulty in coping with adaptive changes. Instead, the Commissioner asserts that "the ALJ explained that, based on the totality of the evidence, [Claimant]'s limitations in adapting and managing himself were adequately addressed by restrictions on the type and demands of work [Claimant] could perform and on the type and intensity of social interactions the work required." (Dckt. #20 at 10).

The Court agrees with Claimant and rejects the Commissioner's argument for two reasons.

First, as stated above in Section III(A), ALJs are required to provide an explanation when they do not incorporate a limitation into a claimant's RFC that has been recommended by a physician whose opinion that the ALJ has found to be persuasive. This is particularly so where – as here – the opinion in question was issued by an agency doctor who is "'unlikely therefore to exaggerate an applicant's disability.'" *Sapp*, 2020 WL 1061238, at *5, *quoting Garcia v. Colvin*, 741 F.3d 788, 761-62 (7th Cir. 2013). The ALJ offered no explanation for her failure to include limitations on adaptive changes in Claimant's mental RFC here. Moreover, contrary to the Commissioner's assertion, the ALJ did *not* explain that the limitations created by Claimant's

difficulties with adaptive changes were "adequately addressed" by restrictions on the type and demands of work Claimant could perform and on the type of social interactions that work required. Indeed, the excerpts of the ALJ's decision that the Commissioner cites provide no linkage between Claimant's moderate limitations with adapting or managing himself and the limitations that the ALJ did include in Claimant's mental RFC. (*See* Dckt. #20 at 10 (citing R. 18-19, 35)).

Second, as multiple courts have held, the limitations that the ALJ included in Claimant's mental RFC do *not* account for a moderate limitation in adaptive functioning. As the Court in *Garcia v. Saul*, 509 F.Supp.3d 1306 (D.N.M. 2020), explained when dealing with a comparable factual record:

> The conundrum for the Court is that neither the consultants' RFCs nor the ALJ's slightly more restrictive RFC expressly include any limitations in adaptive functioning. Nor do the respective adjudicators offer any explanation as to the degree and extent of Plaintiff's adaptation limitation, apart from limiting him to unskilled work, or in the ALJ's case, simple, routine work with occasional interactions. But adaptive functioning is *critical* when performing unskilled work, even according to the Administration's own regulations. *See* 20 C.F.R. §§ 404.1545(c). Indeed, '[t]he basic demands of competitive remunerative unskilled work include the ability[y] (on a sustained basis) to . . . deal with changes in a routine work setting.' SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985); *see also* POMS § DI 25020.010(A)(3)(a). *This ability to 'deal with changes in a routine worksetting' is separate and distinct from the ability to complete simple, routine tasks, to make simple work-related decisions, or to interact occasionally with supervisors, co-workers and the public. See* POMS §DI 25020.010(A)(3)(a).

*Id.*, at 1316 (emphasis in added); *Bagby v. Comm'r of Soc. Sec. Admin.*, 606 Fed.Appx. 888, 890 and n.2 (9th Cir. 2015) (agreeing with claimant that a moderate limitation in her ability to respond appropriately to usual work situations and to changes in a routine work setting was not incorporated by an RFC assessment limiting her to simple, repetitive tasks and limiting her contact with others); *Proulx v. Kijakazi*, No. 18CV1755 JAH-BGS, 2023 WL 5737785, at *6 (S.D.Cal. Sept. 5, 2023) (same); *Spencer v. Kijakazi*, No. 20-CV-00786-NYW, 2021 WL

4133920, at *7 (D.Colo. Sept. 10, 2021) (citing multiple cases); *Kristin I. v. Kijakazi*, No. 20-01182-EFM, 2021 WL 4523455, at *4 (D.Kan. Oct. 4, 2021); *Geyer v. Saul*, No. CIV 20-0351 KBM, 2021 WL 2018873, at *4 (D.N.M. May 20, 2021).

In sum: "a 'moderate impairment is not the same as no impairment at all[,]' *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), and . . . moderate limitations 'must be accounted for in an RFC finding.'" *Garcia*, 509 F.Supp.3d at 1317, *quoting Jaramillo v. Colvin*, 576 Fed.Appx. 870, 876 (10th Cir. 2014). The ALJ found that Claimant had a moderate limitation in his adaptive functioning, yet she failed to either account for that moderate limitation in the RFC or explain why she failed to do so. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("even a moderate limitation on responding appropriately to supervisors may undermine seriously a claimant's ability to work. . . . An ALJ must explain why she does not credit evidence that would support strongly a claim of disability or why she concludes that such evidence is outweighed by other evidence.") (citations omitted). As such, the ALJ failed to build a logical bridge between the physician's opinion evidence that she found persuasive and the RFC that she formulated. *See, e.g.*, *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008). This error was not harmless, and remand is required. *Id.*; *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir 2018).[3]

[3] The Court further notes that the ALJ posed three hypotheticals to the VE during the hearing, none of which apprised the VE of Claimant's limited ability to adapt to workplace changes. The ALJ's utilization of such hypotheticals is another error because "[w]hen the ALJ supplies a deficient basis for the VE to evaluate the claimant's impairments, this error necessarily calls into doubt the VE's ensuing assessment of available jobs." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)); *Decamp*, 916 F.3d at 675-76. On remand, the ALJ should also provide hypotheticals to the VE which apprise her of all of Claimant's limitations that are supported by the record.

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #16), is granted and the Commissioner's motion for summary judgment, (Dckt. #19), is denied. This case is remanded for further administrative proceedings consistent with this Opinion.

**Date: September 27, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**